# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANET L. HAYES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | |
| UNITED PARCEL SERVICES, INC., ) | |
| also doing business as United Parcel ) | |
| Services, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Janet L. Hayes ("Plaintiff") for her cause of action against Defendant United Parcel Services, Inc., also doing business as United Parcel Services ("UPS"), alleges and states:

### Nature of Action

1. This is an action brought under Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to make Plaintiff whole, and under the Oklahoma Discrimination in Employment Act, 25 O.S. § 1101 et seq. for Plaintiff's supplemental state claim.

### Jurisdiction and Venue

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1345 and 1367. This action is authorized and initiated pursuant to the Americans With

Disabilities Act of 1990, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Oklahoma Discrimination in Employment Act, 25 O.S. § 1101 et seq.

3.      Venue is proper in the Western District of Oklahoma in that the employment practices hereinafter alleged to be unlawful were committed in the Western District of Oklahoma.

## Parties

4.      At all relevant times, Plaintiff was and now is a resident of the City of Weatherford, Custer County, State of Oklahoma.

5.      At all relevant times, Defendant was and now is a corporation doing business in the Western District of the State of Oklahoma.

## Fact Allegations

6.      On February 16, 1982, UPS employed Plaintiff on a full-time basis as a UPS driver.

7.      In order to perform services as a UPS driver, Plaintiff had to pass a physical examination by a physician certified by the United States Department of Transportation ("DOT") and to be licensed as a driver of a motor vehicle by the State of Oklahoma.

8.      For the first six (6) years of her UPS employment, Plaintiff drove a UPS vehicle and delivered packages to UPS customers.

9.      After six years of UPS employment, Plaintiff was promoted by UPS to the position of oncar supervisor.

10. Thereafter, Plaintiff was transferred to various locations in Oklahoma to perform her UPS work and Plaintiff served as a supervisor in her UPS assigned positions.

11. In February 1994, Plaintiff was promoted to Manager and transferred to Clinton, Oklahoma.

12. In May of 1994, Plaintiff injured her neck and despite Plaintiff's neck injury and its required care and treatment to alleviate Plaintiff's pain, Plaintiff continued to perform her job duties in a highly competent manner.

13. In 2001, UPS placed Plaintiff on special assignment that required Plaintiff to travel extensively out-of-state. As a result of her requirement to lift repetitively heavy luggage and a laptop computer, Plaintiff injured her lower back and reported her injury to Becky Knight ("Knight"), UPS' Human Resources Supervisor, who told Plaintiff that if Plaintiff did not have a date and time of injury, insurance would not cover it, and as a consequence, Plaintiff did not submit her claim of injury.

14. As a result of Plaintiff's back injuries, Plaintiff was operated and UPS assigned Plaintiff to its UPS' Muskogee, Oklahoma facility.

15. Even though Plaintiff had surgery on her lumbar spine in 2001, she continued to experience great neck pain that her physician treated with prescribed pain medications.

16. When the prescribed pain medication did not control Plaintiff's pain and caused Plaintiff to suffer nausea and stomach disorders, Plaintiff's physician in 2001 prescribed a Duragesic patch, a Schedule 2 controlled medication.

17. Plaintiff used the prescribed medication as directed by her physician and did

not abuse her prescribed medication.

18. As a consequence of taking the pain medication that was prescribed, Plaintiff was able to control her physical pain and perform her UPS job duties and responsibilities in a competent and responsible manner and without posing any threat to the health, safety, and welfare of her fellow employees, herself, or to the public.

19. Although Plaintiff's job duties as manager did not require her to drive a vehicle frequently, Plaintiff continued to keep her Oklahoma driver's license current and to take the required DOT physical examination to be certified. Plaintiff always passed those examinations that required disclosure by Plaintiff of all medications she was taking.

20. After a leave of absence for surgery, Plaintiff returned to work in August 2005 and Plaintiff truthfully informed UPS of the medication she was taking as she always informed the physicians performing the DOT physical examinations for certification.

21. In October 2005, Plaintiff had an automobile accident while off-duty when her vehicle blew a tire. No other motorists were involved in that accident and Plaintiff informed UPS of the accident.

22. Plaintiff was not impaired at the time of her accident and she was not cited for any traffic violations.

23. Plaintiff took her required DOT physical examination for certification in November 2005. The physician was approved by UPS and his office was in close proximity to Plaintiff's work. Plaintiff was seen at that office by a physician's assistant and during the appointment, Plaintiff related to the physician's assistant that Knight had advised Plaintiff

that there was a list of medications that Plaintiff could not take and drive a vehicle, and that Duragesic was one of those medications. As a result, the physician's assistant noted that Plaintiff failed due to the medications after Plaintiff truthfully stated that she took Duragesic.

24.  Despite the failure to be certified, UPS wanted Plaintiff to continue performing her job duties as manager through its "peak season", *i.e.*, the Christmas and New Year holidays, and Plaintiff continued to perform those assigned job duties without incident and in a competent manner.

25.  At that time, Plaintiff asked UPS to assign her to a non-DOT licensed and certified position and even though UPS had several available positions for which Plaintiff was well-qualified, it refused to assign one of them to Plaintiff.

26.  At the end of 2005, UPS's Human Resources supervisor, Knight, spoke to Plaintiff telephonically and told Plaintiff that she and Ken Glaus needed to sit down with Plaintiff and have a talk about her health.

27.  UPS regarded Plaintiff as being impaired by prescriptive medications, and when Plaintiff continued to assert that she was not impaired by the prescribed drugs she was taking for pain relief, UPS sent her to another physician, UPS selected to conduct the examination.

28.  That physician told Plaintiff that she was not addicted although he reported to UPS that Plaintiff was impaired which was contrary to what he had orally reported to Plaintiff.

29.  In an effort to determine if the Duragesic was impairing Plaintiff, Plaintiff, at

UPS' recommendation, stopped taking Duragesic for twenty (20) days and during that time, Plaintiff showed no evidence of physical or psychological withdrawal symptoms from her narcotic medications although Plaintiff experienced great pain in her spine.

30.    Plaintiff's own physician, Erick C. DeRocher, treated Plaintiff and wrote his letter that stated, *inter alia*, that Plaintiff had been under his care since 1996, that in his medical opinion, Plaintiff had no evidence of physical or psychological addiction to narcotic medications, and that Plaintiff had no problems related to functioning in her work capacity or activities of daily living when her pain was adequately controlled.

31.    After UPS' peak season was over and on March 2, 2006, because UPS regarded Plaintiff as being impaired, UPS took Plaintiff out of service and expressed concern about the medications Plaintiff was taking even though Plaintiff had performed her job duties without incident during UPS' busiest time of the year.

32.    Although UPS' written policies required that two employees who were trained in substance abuse must observe an employee and determine if there is an impairment, UPS did not follow its own policy when it took Plaintiff out of service on March 2, 2006.

33.    At no time during Plaintiff's employment did Plaintiff's actions or behavior give UPS reasonable cause to require a fitness-for-duty medical evaluation although Plaintiff was subjected to several evaluations and as a consequence, Plaintiff sought an evaluation from her treating physician who had cared for her over the past decade.

34.    Even though Knight told Plaintiff that Plaintiff could not drive a vehicle while taking the Duragesic, 49 C.F.R. Section 391.41(12), provides otherwise, and in June 2006,

Plaintiff went to see a physician frequently used by UPS to conduct physical examinations and was examined by that DOT-approved physician, Dr. Anwar, who certified Plaintiff as fit after his physical examination of Plaintiff and after Plaintiff disclosed fully and completely all the medication that she was taking. Because UPS did not send Plaintiff to Dr. Anwar, it was angry at Plaintiff for seeking his examination and certification.

35.   After Plaintiff was taken out of service by UPS on March 2, 2006, UPS placed Plaintiff on short-term disability and despite Dr. Anwar's certification, on February 28, 2007, UPS administratively terminated Plaintiff although Plaintiff was placed on long-term disability at that time.

36.   Plaintiff's conversion by UPS to long-term disability resulted in Plaintiff receiving sixty percent (60%) of her earnings rather than one hundred percent (100%), the loss of her bonus compensation, and required Plaintiff to pay for her health insurance, all to her extreme financial detriment.

37.   Plaintiff filed timely her charge of discrimination with the Equal Employment Opportunity Commission, Charge No. 564-2006-00714 and the Equal Employment Opportunity Commission issued its Notice of Rights to Sue on March 28, 2007. Accordingly, Plaintiff has timely brought her action against UPS.

FIRST CAUSE OF ACTION

VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
42 U.S.C. § 12101, et seq, AS AMENDED BY THE
CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 1981a

38.   Plaintiff's on-the-job injuries required medical treatment, surgical

interventions, and pain management with prescribed medications as hereinabove alleged.

39. Plaintiff at all times openly acknowledged the Duragesic and other medications she took to physicians approved by UPS to perform the physical examinations for DOT certification.

40. For over five (5) years, Plaintiff performed her job duties while taking the prescribed medications without any incident or impairment, and without developing either a physical or psychological dependence on those medications.

41. Plaintiff had a well-documented record of neck and back injuries that she suffered on the job as herein above allege that compromised her degenerative disc disease of her cervical and lumbar spine.

42. UPS knew that Plaintiff had surgical intervention and followup care, treatment, and that Plaintiff took prescriptive medications to obtain relief from her pain symptoms.

43. Plaintiff was clearly perceived and regarded by UPS to be impaired by Plaintiff's usage of prescriptive drugs to cope with her pain that she had in her cervical and lumbar spine.

44. UPS regarded Plaintiff as disabled from performing any job task in its workplace when it placed Plaintiff on short-term disability and subsequently administratively terminated Plaintiff and placed Plaintiff on long-term disability.

45. UPS failed and refused to reasonably accommodate Plaintiff when it regarded Plaintiff as disabled by failing and refusing to allow Plaintiff to work while taking prescriptive drugs that relieved Plaintiff's pain and allowed Plaintiff to function in the

workplace without physical or psychological addiction.

46.     UPS violated the ADA, 42 U.S.C. §§ 12101-12213, by refusing to permit Plaintiff to work as manager or in any other position in its workplace while taking prescriptive medications to alleviate Plaintiff's pain when UPS knew that Plaintiff's usage of the prescriptive medications did not pose any threat to the health, safety and welfare of Plaintiff, her fellow employees, or to the public.

47.     The effect of UPS's conduct has been to deprive Plaintiff of equal employment opportunities and deprive her of the same rights as are enjoyed by other citizens.

48.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained substantial economic losses, including back pay and front pay, and Plaintiff has also sustained loss of financial stability, peace of mind and future security and has suffered injury to her work reputation, embarrassment, humiliation, mental and emotional distress and discomfort and loss of enjoyment of life, all to her detriment in damaging amounts not fully ascertained but alleged to be well in excess of $100,000.00.

49.     In acting as described above, UPS acted oppressively, maliciously, fraudulently and outrageously towards Plaintiff, with conscience disregard for her known rights and with the intention of causing unjust and cruel hardship to Plaintiff.  In acting in a deliberate, cold, callous and intentional manner UPS intended to and did injure and annoy Plaintiff and Plaintiff requests the assessment of punitive damages against UPS in an amount to punish and make an example of it.

WHEREFORE, Plaintiff prays for judgment against Defendant UPS as follows:

(1)   That this Court issue a declaratory judgment declaring that the actions of UPS violated Plaintiff's rights under Title I of the Americans With Disabilities Act, 42 U.S.C. § 112, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 (a);

(2)   That the Court enjoin and restrain UPS and all of the persons acting on behalf of or in concert with it from engaging in such unlawful employment practices;

(3)   That the Court enter judgment in favor of Plaintiff and against Defendant UPS for back pay in the amount of wages and fringe benefits, including disability benefits, it determines that Plaintiff lost as a result of Defendant's unlawful conduct, together with interest;

(4)   That the Court enter judgment in favor of Plaintiff and against Defendant UPS reinstating Plaintiff to the position she would have had absent Defendant's unlawful conduct, or in the alternative, award Plaintiff front pay in the amount of wages and benefits it is determined that Plaintiff is likely to lose because of Defendant's unlawful conduct;

(5)   That the Court enter judgment in favor of Plaintiff and against Defendant for compensatory and punitive damages, including, but not limited to, damages for mental anguish and humiliation together with interest;

(6)   That the Court award Plaintiff reasonable attorneys fees, expert witness

fees, and costs of this action.

(7)   That the Court award such other, further and equitable relief as may be appropriate to address fully the deprivation of Plaintiff's rights and to make Plaintiff whole, and to prevent the occurrence in the future and to protect other employees from such unlawful behavior.

SECOND CAUSE OF ACTION
VIOLATION OF THE OKLAHOMA DISCRIMINATION
AND EMPLOYMENT ACT,
25 O.S. §§ 1101 et seq. – BURK TORT CLAIM

50.   Plaintiff incorporates by reference Paragraphs 1 through 49 herein as though set forth in full herein.

51.   Plaintiff brings her second cause of action pursuant to 28 U.S.C. § 1367 as a supplemental and pendent state claim.

52.   Plaintiff was at all relevant times regarded by UPS as having an impairment and being disabled and was a "handicapped person" within the statutory definition of 25 O.S. § 1301(4).

53.   The termination of Plaintiff's employment by UPS was in violation of Oklahoma's public policy that prohibits discrimination in the workplace based on handicap as defined in 25 O.S. § 1301(4).

54.   As a direct result of UPS's discriminatory and wrongful termination of Plaintiff in violation of Oklahoma's stated public policy, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, injury to reputation, humiliation,

embarrassment, and loss of enjoyment of life, all to her damage in excess of $100,000.00.

55.     Plaintiff further seeks punitive and exemplary damages against UPS.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)     For actual damages in a sum in excess of $100,000.00 and in accordance with the proof at the time of trial;

(2)     For punitive and exemplary damages in an amount as determined by the jury at the time of trial;

(3)     For interests thereon;

(4)     For her costs;

(5)     For a reasonable attorney's fee; and

(6)     For such other and further action as this Court deems just and proper.

        WARD & GLASS, L.L.P.

        s/Stanley M. Ward
        Stanley M. Ward, OBA#9351
        Woodrow K. Glass, OBA#15690
        Scott F. Brockman, OBA#19416
        One Corporate Center, Suite 350
        2600 John Saxon Blvd.
        Norman, Oklahoma   73071
        (405) 360-9700
        (405) 360-7902 (fax)
        ATTORNEYS FOR PLAINTIFF

***JURY TRIAL DEMANDED***
***ATTORNEYS' LIEN CLAIMED***